No. 3789

Second Circuit

MOORE v. FITZGERALD

(January 14, 1932. Opinion and Decree.)

Edward Barnett, of Shreveport, attorney for plaintiff, appellee.

Robert A. Hunter, of Shreveport, attorney for defendant, appellant.

McGREGOR, J.   On October 1, 1925, G. D. Moore, the original plaintiff herein, acquired by purchase from T. M. Vaughan the following described property:

"A portion of lot Two (2) of Smith Subdivision, of Section 16, Township 17, Range 14, as per plat in conveyance book 33, page 251, more particularly described as commencing in the SW corner of said Lot Two (2), running thence east sixty-six (66) feet, thence north *to right-of-way of the V. S. & P. Railway*, thence southwesterly *along said right-of-way* to west boundary line of said Lot Two (2), thence south along said western boundary line to point of beginning." (Italics ours.)

Neither the petition nor the testimony discloses from whom or when the said Vaughan acquired the property.  Plaintiff's petition describes the said tract as being bordered on the *north by a public road*, but the above description, which is copied literally from the copy of the deed attached to the petition, states that it is bounded on the north by the *right of way of the V. S. & P. Railway*.  So that, at the very beginning, there is an apparent discrepancy between the allegation of the petition and the attached document with reference to the question as to whether there is a public road on the north boundary of the tract alleged to be owned by the plaintiff.

Originally all of lot two of the Smith subdivision was sold by B. B. Smith to W. W. Jones and W. C. Evans, with special reference to the original plat of the subdivision as recorded in the conveyance records of Caddo parish.  The date of the recordation of this sale was April 1, 1903, and the plat of the subdivision was recorded on the same date.  As well as can be determined from a certified copy of this plat filed in evidence, it appears that the entire north boundary of the said lot two was originally along and adjoining the V. S. & P. Railway, with no road or street between.

According to the petition in this suit, Mrs. Helen K. Fitzgerald, the defendant, is the record owner of all lot two of the B. B. Smith subdivision except the above-described strip sixty-six feet wide off the west end, which is alleged to be owned by the plaintiff.  After this suit was filed, and before it was tried, the plaintiff died.  Luther Moore, testamentary executor, has been substituted as plaintiff, and is now prosecuting the suit in his representative capacity.

It is the contention of the plaintiff that there is a public road thirty-two feet wide on the entire north boundary of lot two, but that the defendant not only refuses to admit or recognize its existence, but is fencing it and plowing it up and otherwise obstructing it.  This suit was brought by the plaintiff against the defendant to have the said road recognized.  A preliminary writ of injunction was asked for to restrain the defendant from plowing this

strip and from placing obstructions and fences across and in the said public road. On trial there was judgment for the plaintiff, and a preliminary writ of injunction was issued as prayed for. From that judgment, the defendant has appealed.

―――

## OPINION

Plaintiff and defendant trace their titles to a common author, W. W. Jones, who, on August 16, 1906, owned the entire lot two. On that date W. W. Jones sold the entire lot to John E. Murray and in the body of the deed it is described with reference to the original plat which, as stated above, was recorded on April 1, 1903, and which, as a matter of fact, shows no road between the lot and the railroad right of way. It is then stated further that the acreage contained in the lot is 11.24 acres instead of 13.42 acres, as shown by the original plat, and that a corrected map of the lot is filed with the deed and made a part thereof. From the wording of the deed, the plain inference is that this corrected map was prepared for the purpose of showing acreage, and not for the purpose of showing a road or street on the north, for no reference of that kind is found in the deed which was recorded without the map. The original of the deed, as well as the map, if it ever existed, were lost and could not be produced at the time of the trial.

On the same day that John E. Murray acquired the said lot two, he sold eleven acres of it to Isaac Sandford, and it was described as follows:

"Eleven (11) acres of land in Lot 2 of the Smith Subdivision, of the Parish of Caddo, Louisiana, as per map in Book 33, page 251, said lot 2 containing 11.24 acres instead of 13.42 acres shown on the map above referred to and the vendor herein conveys all of said lot 2 except the following piece of land: a piece of ground containing 24/100 acres off the west end of said Lot 2 as per map filed with the deed of W. W. Jones to J. E. Murray, of this date."

It will be noted that in the above deed reference is made to the map which was said to have been filed with the deed from W. W. Jones to John E. Murray but which, as a matter of fact, was never recorded and could not be found at the time of the trial. No reference whatever is made in the said deed to a road or street on the north.

On February 13, 1908, John E. Murray sold the west end of said lot two, sixty-six feet wide, to Isaac Sandford. In this deed, reference is made to the map said to have been filed with the deed from W. W. Jones to John E. Murray, and particular mention is made of the fact that the northern boundary of the .24 acres is along a public road. But nothing in this deed could be binding on the defendant, as it is not in her line of title, and she was no party to it.

On January 4, 1908, Isaac Sandford sold to A. S. Toombs what purported to be all of lot two of Smith's subdivision "less that portion of same given for a road way." The description, as found in the deed, is as follows:

"Lot No. 2 of Smith's Subdivision of part of West half of Section Sixteen (16) Township seventeen (17) Range Fourteen (14) in the Parish of Caddo, State of Louisiana, as per map recorded in Conveyance Book 33 page 251 of the Clerk's office of Caddo Parish, together with all buildings and

improvements thereon, less that portion of same given for a roadway, and being the same property acquired by this vendor from J. E. Murray on August 16, 1906, as per deed in Conveyance Book 43 page 391, and by said Murray from W. W. Jones, as per deed in Conveyance Book 42, page 253, said land containing Eleven acres more or less."

A careful study of this deed discloses that it was intended to convey all of lot two except the west .24 acre which had been retained by John E. Murray, but which was subsequently sold by Murray to Sandford. The reference to the roadway is meaningless, as there is nothing in any of the deeds without the alleged map to fix its location. No special reference is made to this so-called new map in this deed.

Some few months after he acquired the property A. S. Toombs died, and it was acquired by his widow, Mrs. Florence Toombs, on October 30, 1909. The description by which she acquired the property was as follows:

"Lot Two (2) of the Smith Subdivision."

Florence Toombs subsequently died, and on April 5, 1924, Mrs. Marion Beattie acquired the property under the following description:

"Lot No. 2 of the B. B. Smith Subdivision of Caddo Parish, Louisiana, as per map recorded in the Conveyance Records of Caddo Parish, Louisiana, together with all the buildings and improvements thereon."

Marion Beattie died, and in the course of the administration of her succession Mrs. Helen K. Fitzgerald, the defendant, acquired the property at sheriff's sale under the following description:

"Lot Two of the B. B. Smith Subdivision, Caddo Parish, Louisiana."

From the last three transfers it will be seen that, dating from the year 1909 that portion of the property now owned and held by the defendant has been sold and described as lot two of the Smith subdivision without any reference to any public road or corrected map. So far as the deeds are concerned, the defendant has title to the entire lot two, but since there is another chain of conveyances which show the plaintiff to be the owner of a strip off the west end of the lot, sixty-six feet wide, and containing .24 acre, the defendant could not be recognized as the owner of this portion of lot two, even though her deed does describe and include it.

If, in the chain of conveyances by which the plaintiff claims the title to the west .24 acre of lot two, there are references to a roadway being on the northern boundary of that particular tract, those references cannot be binding on the defendant if in her chain of title there are no such references. Particularly is this true since defendant's chain of title is governed throughout by the original plat which shows no roadway, as contended for by the plaintiff.

It is argued that the so-called corrected map alleged to have been attached to and made a part of the deed from W. W. Jones to John E. Murray on August 16, 1906, shows a street or public road thirty-two feet wide on the entire northern boundary of lot two. But this map was never recorded, nor has it been shown to have been actually attached to the deed or filed. Unless that al-

leged map was actually filed and recorded, it was not binding upon third persons who did not buy with reference to it.

Over the objection of the defendant, there was admitted in evidence a copy of a plat attached to an abstract covering the west sixty-six feet of lot two. In the caption of this abstract it is stated that lot two extends north to the right of way of the V. S. & P. Railway, and that the northern boundary extends southwesterly along the said right of way to the west boundary line of the said lot two. This copy of the so-called plat carries no date showing when it was made, nor does it show that it was ever filed or identified with any deed. It shows on its face that it was made by H. E. Barnes for Isaac Sandford and not for either W. W. Jones or John E. Murray, the parties to the deed to which it is alleged that a corrected map was attached for the purpose of showing acreage. This copy of a plat does show a thirty-two foot roadway on the north of lot two, but there is nothing on the face of the map to show that it was ever filed or recorded with any deed. In fact, no such map or plat was ever recorded, and therefore, it cannot, by any stretch of the imagination, or under any theory of the law, be binding on this defendant or any third parties. It would indeed be revolutionary to hold that third parties can be bound by written instruments of any kind to which they were not parties, and which were never placed on public record. If a strip of land thirty-two feet wide can be taken off the north end of defendant's property because of a map which is alleged to have been made, but which was never recorded, the same line of reasoning could deprive her of the west one-half or any other portion of the property upon the simple production of a copy of a deed which some one might claim to have been executed, but never recorded.

In defendant's line of title there is only one reference to a roadway, and that was on January 4, 1908, when Isaac Sandford executed a deed to A. S. Toombs covering all of lot two "less that portion of same given for a roadway." There is nothing in that deed to indicate where the roadway was. In the argument of counsel for plaintiff, it is suggested that the strip sixty-six feet wide was reserved off the west side of lot two for a roadway. It could easily be that this reference to a roadway having been reserved was to this strip. The deed specially stipulates that the land being sold was the same which the vendor had acquired from John E. Murray and which Murray acquired from W. W. Jones. In those two former deeds there was no reference whatever to any roadway being on the north of the said property.

The evidence discloses, therefore, that nowhere in defendant's chain of title is there any reference to the roadway claimed by the plaintiff. Furthermore, the very deed by which plaintiff acquired the property states specifically that the northern boundary line of lot two extends to and along the right of way of the railroad. For some unexplained reason the plaintiff leaves a skip in his chain of title. If the deed from T. M. Vaughan, plaintiff's vendor, states, as it does, that the line of lot two extends to and along the railroad right of way, it is to be presumed, until otherwise proved, that the deed by which Vaughan acquired the property stated the same thing. Also, the caption of the ab-

stract of title of plaintiff's portion of lot two shows that the northern boundary of the said lot two extends to and along the said railroad right of way. So that it is clearly shown by the chains of title of both the plaintiff and defendant that the northern boundary line of lot two extends to and along the railroad right of way.

Some effort was made to show the existence of this road by oral testimony. It is admitted by all that according to the original plat there was no roadway, but that lot two extended all the way to the railroad right of way. The only claim to the roadway is based on the alleged map that was said to have been attached to the deed from W. W. Jones to John E. Murray. Neither of them remembered or knew anything about the road. Dedication of streets or roads cannot be shown by oral testimony, particularly when the alleged roads or streets are claimed under written deeds of sale.

The plaintiff has not only failed to establish the dedication of the roadway as claimed in his petition, but the defendant has clearly shown title to all of lot two up to the railroad right of way, except a strip off the west end sixty-six feet wide, which is owned by the plaintiff.

For the reasons assigned, it is hereby ordered, adjudged, and decreed that the judgment appealed from be, and the same is hereby, reversed and annulled; that the preliminary injunction issued herein be, and the same is hereby, dissolved; that the plaintiff's suit be dismissed as of non-suit, and that the plaintiff pay all the costs of both courts.