102 So.2d 554 (1958)
Lee HERZBERG et al., Plaintiffs-Appellants,
v.
Holt T. HARRISON et al., Defendants-Appellees.
No. 4571.
Court of Appeal of Louisiana, First Circuit.
April 21, 1958.
Rehearing Denied May 26, 1958.
Sanders, Miller, Downing, Rubin & Kean, Baton Rouge, for appellants.
Durrett, Hardin & Hunter, Cadwallader, Dameron & Perkins, Baton Rouge, for appellees.
TATE, Judge.
Plaintiffs appeal from the trial court's refusal to enjoin the defendants from violating certain restrictive covenants allegedly *555 affecting all property situated in a subdivision located in East Baton Rouge Parish.
Codefendant Harrison acquired a 52-acre tract from Paul Broussard on July 8, 1950, and then conveyed a one-half interest in indivision therein to deFrances, another codefendant. The other defendants of plaintiffs are all the present owners of plots or lots located in the northern 29 acres of this tract and sold by the two previously named defendants.
By a plat of survey of July 14, 1950 (hereinafter denoted as the 1950 plat), Harrison and deFrances had proposed dividing the northern 29 acres of the Broussard tract into twelve residential lot (numbered 1 thru 12), each having a front of 200" upon the highway by a depth of 500" and containing 2.26 acres; and one commercial lot (number 13), which latter will play no further part in the ensuing discussion. At the left-hand corner of this plat was the following notation:

"Deed Restrictions
"No residence shall be constructed on any of the above plots at a cost of less than $10,000. Not more than two residences shall be constructed on any one plot. All plots shall be used for residences only, except plot 13, which may be used for commercial purposes. No plot can be resubdivided at any time during the next twenty-five years, except plot 13."
This plat has never been recorded. Nevertheless the plaintiffs contend that all lots sold or retained by Harrison and deFrances in this subdivided tract are affected by the above-quoted general restrictions, which are covenants running with the land. This allegedly results from the insertion of such restrictions in some of the sales by Harrison and deFrances, from these subdividers' course of conduct, and from the recordation of a 1954 plat of survey containing the identical subdivision lots and restrictions.
The District Court, however, agreed with the defendants that any general plan of subdivision had been abandoned and that the building restrictions contained in some of the sales were, at most, merely personal covenants between the grantors and the grantee and, as such, not enforceable by the other grantees. It thus refused on behalf of the grantees-plaintiffs to enjoin the defendant grantors and grantees from violating the alleged building restrictions.
The present legal action, incidentally, was triggered by the inclusion of the land forming certain of the alleged residential lots (namely 1, 11, and 12) of this alleged subdivision, as many smaller commercial lots of the later "North Sherwood Forest Subdivision", which defendants Harrison and deFrances created by plat and general restrictions recorded in the conveyance records; and by the purchase from them of two of these smaller commercial lots by the Home Oil Company, also a defendant to this action, with the intention of its erecting a gasoline service station thereupon.
The legal principles applicable are not disputed. Building restrictions, such as those in question, are valid and enforceable where inserted in deeds in pursuance of a general plan devised by the ancestor in title to maintain certain building standards; such restrictions inure to the benefit of all other grantees under a general plan of development and are real rights running with the land, which the grantees or their successors in title may enforce by injunction. Salerno v. De Lucca, 211 La. 659, 30 So.2d 678; Alfortish v. Wagner, 200 La. 198, 7 So.2d 708; Edwards v. Wiseman, 198, La. 382, 3 So.2d 661; Murphy v. Marino, La.App. 1 Cir., 60 So.2d 128; Munson v. Berdon, La.App. 1 Cir., 51 So.2d 157.
As these cases indicate "In construing restrictions on the use of property, the intention of the parties, as gathered from the surrounding circumstances and *556 the purpose of the restrictions, must be considered and given effect. Such restrictions are strictly construed against the parties seeking to enforce them. * * *; and all doubts are resolved in favor of the free use of the property", 26 C.J.S. Deeds § 163 a, p. 1094. See also 14 Am.Jur. "Covenants", etc., § 308, p. 650, § 311, p. 61.
For convenience in discussion, we are setting for the in an appendix to this opinion the ownership and chain of title of each of the purported residential lots of the alleged subdivision.
Applying the pertinent principles, the District Court in our opinion correctly held that the plaintiffs did not satisfy their burden of proving an intention on the part of the grantors and their grantees to establish a "general plan" of subdivision with general restrictions applicable to the lots therein.
We think the following evidence to be significant in this regard:
(1) Six of the twelve lots contained no indication in their chain of title of restrictions affecting them.[1] Alfortish v. Wagner, 200 La. 198, 7 So.2d 708, relied upon by appellants as authority that the absence of such restrictions in some of the lots does not disprove a general plan, is readily distinguishable, for there the "vast majority" of the deeds therein contained the restriction sought to be enforced, 7 So.2d 709, whereas in the present instance one-half of the lots allegedly affected failed to do so.
(2) The testimony of the subdividers that they had abandoned the general plan of subdivision when the parish authorities refused to approve the 1950 plat for lack of dedication of sufficient public servitudes; and the admitted fact that, indeed, the 1950 plat was never recorded or filed. (Some of the conveyances from the subdividers contained references to the 1950 plat or the alleged restrictions, they testified, since the 1950 plat had been passed around to the Baton Rouge real estate agents for purposes of identification of the property only.) We do not necessarily hold that the lack of recordation of a general plan of subdivision is fatal to proof of same; but such lack under the present circumstances is certainly an indication that the proposed general plan had been abandoned.
(3) The clear reflection in the chains of title of two of the plaintiffs (see Appendix, Lots 7 and 10) that by correction deeds executed in 1952 and 1953, any reference whatsoever in the original conveyances by the subdividers in 1951 to the unrecorded 1950 plat and/or the alleged restrictions was specifically deleted.
(4) The equally clear indication in the acquisition by another plaintiff (see Appendix, Lot 3) of a specific intention not to sell or purchase under any general plan of subdivision, in the description being by metes and bounds and by a special plat of survey of the land sold only, without any reference whatsoever to any restrictions or any general plan of subdivision or development.
(5) Where, under a "restrictions" clause, restrictions similar to those found in the 1950 plat are contained in some of the conveyances by the subdividers (see Appendix, Lots 4, 5, 6, 8, 9, 11), such restrictions do not indicate them to be applicable to the purchaser's heirs, successors, or assigns *557 (cf. the clause in Tucker v. Woodside, La.App. 1 Cir., 53 So.2d 503, at page 504), nor is there any reference whatsoever to them or to the land in question as forming part of a general plan of development affecting any other lot. (Again, this circumstance is cited as an indication of the absence of intention to sell and purchase lots under a general plan of development, rather than as conclusive evidence of a lack of such intention.)
In urging that the trial court erred, plaintiffs-appellants point out that the chain of title to the lots of three of the defendants (see Appendix, Lots 6, 9, 11) show the building restrictions to be applicable thereto, and that Harrison and deFrances, the other two defendants (see Appendix, Lots 1, 2, 11, 12), being the original subdividers, should not be heard to complain of restrictions represented by them by circulation of the 1950 plat among the Baton Rouge real estate agents to be applicable as general subdivision restrictions to all the lots purchased in the subdivision. Thus, it is forcefully urged, it is of no moment that the lots of three of the five plaintiffs (insofar as owning Lots 3, 7, and 10, see Appendix) contained no restrictions in their chain of title, since by instituting this suit these plaintiffs all agreed to be bound equally with the defendants by the general restrictions in question.
We think this argument overlooks, as stated under somewhat similar circumstances in Munson v. Berdon, La.App. 1 Cir., 51 So.2d 157, at page 161 that, "In order to arrive at the plan of subdivision, we must take what we find on the date of the sale as contained in each act of sale." From the absence of restrictions in the chains of title of half of the lots of the subdivision, and from the absence of recordation of any general plan of subdivision or restrictions, the purchasers of any of the lots affected would be entitled to assume that their acquisition was free of any general plan importing covenants running with the land; and that if any restrictions were contained in their own conveyance, such were merely personal as between themselves and their grantors, and waivable by the latter.
For this same reason, we are unable to attach significance to the filing of a subdivision plat in 1954 after all the sales by the subdividers had been made except that to defendant Home Oil (see Appendix, Lot 11.) Further, we think the evidence shows that this plat, an exact duplicate (but differently dated, i.e., as of 1954, and with additional restrictions as to sewerage disposal) of the 1950 plat, was executed and recorded at the instance of plaintiffs Latil (see Appendix, Lot 5) solely to assure a more accurate description of the latters' lot for purposes of their receiving a homestead association loan, and not from any intention to re-institute the abandoned general building restrictions.[2]
Thus we think the preponderance of the evidence supports the finding of the District Court that no general plan of subdivision and development affected the lots with which this suit is concerned, so that no general building restrictions applied to all such lots as covenants running with the land enforceable by any of the grantees of the original subdividers or their successors. The judgment of the District Court dismissing plaintiffs' suit must therefore be affirmed.
Affirmed.

*558 Appendix
Chart showing status of Lots One Through Twelve of alleged subdivision of the "N.W. Portion of Broussard Tract", T7S, R2E by defendants Harrison and deFrances, below referred to as "subdividers"; subdividers having acquired the tract from Broussard by sale dated July 8th, 1950.

 I. II. III. IV.
Lot Surname or corporate Chain of title to said lot, commencing Alleged subdivision restrictions,
Number. designation of with acquisition from or references thereto, in said
 present owners thereof; subdividers. (Reference in parentheses lot's chain of title.
 and status as is to exhibit number in
 plaintiff (P) or defendant record.)
 (D) in this
 action.
 1. Harrison, (a) Partition deed dated 11/24/53, Deed contains no reference to restrictions,
 one of subdividers. with other subdivider, of Lots 1 but description is with
 (D) and 2, each subdivider taking one reference to plat of 1950 survey
 of these lots (P-11). of subdivision; upon which unrecorded
 plat the alleged restrictions
 are set forth.
 2. deFrances, the other (a) Same as Lot One above (P-11). Same as Lot one above.
 subdivider. (D)
 3. Davis (P) (a) Cash Sale, 10/11/50, from subdividers None.
 (P-10).
 4. Greene (P) (a) Mortgage Sale, 6/22/51, from Both (a) and (b) refer to lot
 subdividers to Stafford (P-24); number of unrecorded plat of
 (b) Cash Sales, 2/16/52, Stafford 1950 survey; but both deeds
 to present owner (P-8). specifically set forth a clause entitled
 "Restrictions" which state
 the same restrictions as those
 contained upon said plat.
 5. Latil (P) (a) Mortgage Sale 10/6/50, from The deed of acquisition (a) without
 & wife subdividers to present owners reference to unrecorded 1950
 (P-9). plat, specifically states the same
 (b) Vendor's Privilege re-purchase restrictions as contained thereupon.
 from Capital Building and The homestead re-purchase
 Loan by present owners, dated (b) does not refer to restrictions,
 9/7/54 (P-31.) but specifically refers
 to plat of 1954 survey, which was
 recorded, and on which restrictions
 were set forth.
 6. Sandefer (D) (a) Mortgage Sale, 7/28/51, by Both (a) and (b) deeds refer by
 & wife. subdividers to Alexander (P-25). description to unrecorded 1950
 (b) Mortgage Sale, 2/13/54, by plat. Deed (a) specifically states
 Alexander to present owners the same restrictions as the plat,
 (P-7). and deed (b) was made "subject
 to restrictions of record affecting
 property in the Conveyance
 records", but then states that
 "the restrictive covenants referred
 to therein were imposed prior
 to February 15, 1950"; whereas
 the plat of the 1950 survey is
 dated five months later, or July
 14, 1950.

*559
 7. Floyd (P) (a) Cash Sale, 9/15/51, from subdividers Description in (a) refers to unrecorded
 to Ribers (P-5). 1950 plat (which contained
 (b) Correction deed, 2/2/53, between alleged restrictions) but
 same parties (HO-4). does not refer to such restrictions
 (c) Cash Sale, 2/2/53, Ribers to in the deed itself. Correction
 present owner (D-6). deed (b) specifically deleted
 all reference to 1950 plat, and acquisition
 deed (c) of present owner
 does not refer either to 1950
 plat nor to restrictions; and it
 shows that a clause, "Restrictions",
 restating such restrictions
 was specifically crossed out by
 linked lines. The effect is that
 there are no subdivision restrictions
 in the chain of title to this
 last and not even any reference
 to the 1950 plat.
 8. Floyd (P) (a) Mortgage Sale, 8/16/51, from Both (a) and (b) deeds specifically
 subdividers to Smith and Clark state under "Restrictions"
 (P-26). Clause the same restrictions as
 (b) Cash Sale, 2/6/53, from Smith on the unrecorded 1950 plat, although
 and Clark to present owner (P-6). no reference is made
 thereto in the deeds, which describe
 the property by metes and
 bounds.
 9. Puckett (D) (a) Mortgage Sale, 8/3/51, from Lot is described in all three
 subdividers to Hubbs (P-27). deeds (a, b, and c) in the chain
 (b) Cash Sale, 12/15/52, from of title with reference to unrecorded
 Hubbs to Pietri (P-4). 1950 plat. Deeds (a) and
 (c) Cash Sale, 7/26/54, from (b) under a "Restrictions" clause
 Pietri to present owner (D-3). specifically state the same restrictions
 as those contained upon
 the unrecorded plat.
 10. Herzberg (P) (a) Mortgage Sale, 4/11/51 from While acquisition deed (a) described
 subdividers to present owner lot per unrecorded 1950
 (P-3). platwithout any reference to
 (b) Correction deed, 8/5/52, between any subdivision restrictions,
 same parties (HO-3). the correction deed (b) specifically
 deleted any reference to the
 1950 deed. The effect is that there
 are no subdivision restrictions in
 the chain of title to this lot and
 not even any reference to the
 1950 plat.

*560
 11. Home Oil Co., Inc. (a) (Whole lot) Mortgage Sale; Deeds (a) and (b) by which the
 (D), in part; the 8/13/51, subdividers to Lee (P-28). subdividers sold and required
 original subdividers (b) (Whole lot) Cash Sale; 8/29/ this lot was by metes and bounds
 (D) the remainder. 52, Lee back to subdividers (P-2). without reference to unrecorded
 (c) (Part of Lot) Mortgage Sale, 1950 plat of survey; however, in
 6/23/56, subdividers to Home Oil a "Restrictions" Clause, the restrictions
 Co. (P-29). stated are those of the
 1950 plat.
 Deed (c) involved the purchase
 by the Home Oil corporation of a
 tract having a 151.9' front on the
 highway by a depth of 200', by
 a description as Lots #31 and 32
 of the North Sherwood Forest
 Subdivision, being 2 of the 5 lots
 into which the land included
 within Lot 11 (of the North
 Broussard tract subdivision per
 the unrecorded 1950 plat) had
 been re-subdivided by the North
 Sherwod Forest Subdivision per
 plat of survey 6/15/55, recorded
 with new subdivision restrictions,
 11/15/55; all 5 of which lots were
 designated as "commercial". The
 other or southern three lots were
 still owned by subdividers at the
 time of suit.
 12. Original Never sold since original acquisition See explanation under Lot 11
 subdividers. by subdividers. above. This land was subdivided
 into 5 lots of North Sherwood
 Forest Subdivision, all designated
 as "commercial." Nothing in
 the chain of title indicates to a
 third person that the restrictions
 of the subdivision set forth by
 the unrecorded plat of 1950 survey
 applies to this tract.

NOTES
[1] As will be seen by reference to Appendix I, three of the twelve alleged residential lots (3, 7, and 10) were specifically not subject to any building restrictions (two of them, lots 7 and 10, by correction deeds executed in 1952 and 1953 specifically deleting reference in the original conveyance to the unrecorded 1950 plat and/or to the supposed restrictions.) Since the 1950 plat was never recorded in the conveyance records, another three lots (lots 1, 2 and 12), never sold by the subdividers to others, contained no indication in their chain of title as to the existence of any such restrictions.
[2] Such plat, moreover, was not recorded or indexed in the conveyance records, nor was there any reference to it in the conveyance records except in the Latil's vendor's privilege re-purchase from the homestead association and then solely as an aid in the description of the La til lot; which distinguishes the present from the situation in the cited case of James v. Delery, 211 La. 306, 29 So.2d 858, where purchasers were held to notice of restrictions incorporated onto a plat which the conveyances in the chain of title indicated was on file in the office of the Clerk of Court (even though it was not recorded in the conveyance records). See Rouyer v. Harrison, La.App. 1 Cir., 58 So.2d 753, Moore v. Fitzgerald, 18 La.App. 412, 138 So. 705.