EASTERN DIST.
*April,* 1836.

CHASE
*vs.*
MAYOR ET AL.

CHASE *vs.* MAYOR ET AL.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

The case of the corporation receiving runaway and offending slaves in the city jail, and working them in the chain gang on the streets, is in the nature of a bailment, in which the bailor is alone benefited; and the corporation is only bound to use the ordinary vigilance and diligence in keeping them.

Where the corporation of New-Orleans received a runaway slave and put him to work in the chain gang, on the public streets, and he made his escape from the guards, and it was in proof that the owner's agent was notified of it the next day, and no neglect or want of the ordinary vigilance appearing : *Held,* that the corporation was not liable for the value of the slave.

This is an action against the mayor and aldermen of the city of New-Orleans, to render the corporation liable and recover from it six hundred dollars, being the alleged value of a runaway slave, which the plaintiff's agent had sent to the city jail for safe keeping, and who escaped from the city guards while working on the streets.

The attorney for the corporation pleaded a general denial; and further averred that a certain slave named Peter, escaped from the police jail on or about the 9th day of August, 1833, without any fault of the keeper; the said slave being employed on the public works; and that the corporation is not responsible therefor.

The facts of the case are set forth in the following opinion of the district judge, who tried the cause in the first instance.

" It appears that Callender & Deblois sold the slave to W. H. Chase, for six hundred dollars, on the 8th of April, 1833. After this sale, the slave was allowed to remain at the store of Callender & Deblois, but having run away and engaged himself on board of a steam-boat, as a cook, Deblois sent him

EASTERN DIST.
April, 1836.

CHASE
vs.
MAYOR ET AL.

on the 17th July, 1833, with an order to the jail, directing the jailor to receive the boy Peter, belonging to Captain W. H. Chase ; no particular instructions were given in relation to the boy.

"On the 29th July, 1833, the boy was put out to work with the chain gang along with fifty-seven other slaves. He had on a ball and chain and they were attended by six keepers ; the slave was put out to work in this way till the 8th August, 1833, on which day he made his escape, but in what manner and under what particular circumstances, does not appear.

"There is an obvious necessity in our city for a place of depot for runaway slaves, and for a place of confinement and punishment of those who offend their masters. The corporation ordinance of 1817, contained in the Digest of 1832, page 127, provides for such a depot, and for the principal regulations in relation to it. When the plaintiff or his agent availed himself of the ordinance to send his slave there, he is presumed to know the regulations relative thereto. I take it for granted, therefore, that the slave was properly sent out to work in the chain gang.

"The only question is, whether the corporation is bound to show an escape under such circumstances as to exonerate them from responsibility ; they plead an escape without fault on their part, and to sustain it, show that the slave was ironed and the gang of fifty-eight slaves was attended with six guards. Were the defendants bound to show special circumstances of escape or loss of the negro, such as would exonerate them, as suppose the negro from hatred of life had jumped into the river and drowned himself, or an escape under such circumstances as no reasonable diligence or vigilance could have prevented ?

"The question is not without itsd ifficulties, but it appears to me they are bound to show such special circumstances to exonerate themselves. It does not appear that any notice of the escape was given to the plaintiff or his agent, or any attempt made to recover him. It is not a case for damages beyond the value of the slave, which I considered as best proved by the sale price in April, 1833.

"It is, therefore, considered that the plaintiff, William H. Chase, recover from the defendants, the Mayor, Aldermen and inhabitants of the city of New-Orleans, the sum of six hundred dollars, with costs of suit." The defendants appealed.

*Peirce* for the plaintiff contended, that there was no error in the judgment appealed from ; and in fact no cause or grounds for the appeal, which should be dismissed.

2. The answer alleges the escape of the slave without the fault of the keepers. The circumstances are to be shown by the corporation.

3. The corporation have not given in evidence any thing exculpatory ; if the six guards were enough for fifty-eight slaves, the boy could not have escaped without some negligence or the existence of some peculiar circumstances or events ; if they were not enough the city is liable for the consequence.

*Eustis* for the defendants.

1. The slave of the plaintiff was committed to the police jail, to be dealt with under the ordinances of the city.

2. The jailor had a right to employ him on the works of the city. See *City Laws, Digest of* 1831, *page* 127, *articles 5 and* 6. He could only be received on condition of being so employed. *Article* 6.

3. All the corporation is bound to do in relation to slaves thus committed, is to have them properly registered, clothed and fed, and provided with proper guards. The corporation is not bound for the *secret* escape of a slave, presumed by his commitment to be a runaway. *Article* 5.

4. No neglect is proved on the part of the servants of the defendants in relation to the escape of the slave.

5. The burden of proof as to the neglect in this case rests with the plaintiff. The difference between this case and an ordinary bailment is obvious. The person of the slave, his commitment as a punishment, and the duty of the jailor to send him out to work, qualify the obligations of the defen-

44

dants, and change materially the presumptions of law in ordinary cases of bailment.

6. Promulgation is not necessary to give effect to the ordinances of the city. The laws of a corporation are presumed to be known to the corporators. In this case the *printed ordinances* are a sufficient promulgation. The slave of the plaintiff was committed under them. See *City Charter*, *section 6. 2 Moreau's Digest.*

*Martin J.*, delivered the opinion of the court.

This is an action in which the plaintiff claims the value of a slave who made his escape while employed with the chain-gang on the streets, under the direction and control of the corporate authorities of the city of New-Orleans. Judgment was rendered against the corporation for the value of the slave, and the defendants have appealed to this court.

The slave in question was a runaway, and sent to the calaboso or city jail as such, without any particular directions regarding his treatment, his character, or the length of time he was to stay.

Three days afterwards this slave was, according to the provisions of one of the city ordinances, sent out in chains to work on the public streets, together with fifty-seven others, similarly situated, attended by six of the city guards as keepers, whose vigilance he eluded, and when the gang was returned in the evening he was missing, having effected his escape.

The district judge who tried the cause was of opinion the slave was properly put out to work, according to the city ordinance of 1817, (*Digest of City Laws, page* 127,) with the chain-gang, and was properly secured by a chain and ball. But the judge further decided that the defendants ought to pay his value, because they failed to prove the special circumstances of the escape, and because they took no steps to recover or reclaim the slave, and gave no notice to the plaintiff of his having made his escape.

The judge in the first instance admits the obvious necessity of providing a place in the city for the confinement and

punishment of runaway and offending slaves. It appears also that the provision made by the city ordinances for these objects has had more in view the convenience of the owners of slaves than the increase of the revenues of the city. And the counsel for the corporation has very properly observed in argument, that if the courts consider the city liable for the value of the slaves sent to the city jail for safe keeping, and who elude the vigilance of the guards, it must cease to receive any more slaves on such conditions.

This is similar to a case of bailment in which the bailor is alone benefited, as the city authorities receive but a bare compensation for the expenses attending the keeping of slaves thus deposited with them.

The facts of the case show that the slave was missing in the evening of the 8th of August, 1833, and on the next day the plaintiff's agent was duly notified of his escape.

From all the facts and circumstances adduced in proof in this case, and attending its history, no evidence was required of the defendants to show the particular manner in which this slave eluded the vigilance of the city guards and effected his escape. It is sufficient that the plaintiff's agent had timely notice; the plaintiff himself, at the time, was residing at Pensacola. If any steps tending to the discovery and reclamation of the slave could be made available, it was the duty of the agent to have taken them in time.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be annulled, avoided and reversed; and that judgment be entered for the defendants, with costs in both courts.

*(margin notes)*

EASTERN DIST.
*April,* 1836.

CHASE
*vs.*
MAYOR ET AL.

The case of the corporation receiving runaway and offending slaves in the city jail, and working them in the chain-gang on the streets, is in the nature of a bailment, in which the bailor is alone benefited; and the corporation is only bound to use ordinary vigilance and diligence in keeping them.

Where the corporation of New-Orleans received a runaway slave, and put him to work in a chain-gang, on the public streets, and he made his escape from the guards, and it was in proof that the owner's agent was notified of it the next day, and no neglect or want of the ordinary vigilance appearing: *Held,* that the corporation was not liable for the value of the slave.