179 So. 841

OUACHITA HOME SITE & REALTY CO.,
Inc., v. COLLIE et al.

No. 34720.

March 7, 1938.

J. Norman Coon, of Monroe, for appellants.

Theus, Grisham, Davis & Leigh, of Monroe, for appellee.

ROGERS, Justice.

In August, 1923, Eugene Ford sold to the Ouachita Home Site & Realty Company, Inc., 129 acres of land situated north of Desiard street and east of the Monroe-Sterlington road, in the city of Monroe. Later, the purchaser, Ouachita Home Site & Realty Company, Inc., established a residential subdivision on the property. This subdivision was given the name "Cole Addition to

the City of Monroe," and from time to time a number of lots were sold therein. Among the purchasers was Mrs. Nellie S. Williams, who, by deed executed on February 7, 1928, acquired lots 3, 4, 5, and 8 of block 42 of the subdivision. In this deed, the vendor Ouachita Home Site & Realty Company, Inc., inserted the following building restrictions, which were accepted by the vendee, viz.:

"The vendee herein agrees, binds and obligates herself, her heirs and assigns to construct or erect on the above described property nothing other than a residence or residences, together with the usual and necessary appurtenances thereunto belonging and further agrees, binds and obligates herself, her heirs and assigns to erect no residence on said property at a cost of less than Three Thousand ($3,000.00) Dollars."

On February 10, 1934, Mrs. Williams sold the property to the Central Company, Inc., and by two deeds dated July 8, 1937, the Central Company, Inc., sold lots 3, 4, and 5 to F. U. Collie. No building restrictions were embodied in the deeds from the Central Company, Inc., to Collie.

On September 13, 1937, F. U. Collie obtained a building permit from the city of Monroe to erect twelve tourist cabins on the property, two of the cabins to cost $500 each and the other ten cabins to cost $400 each, and pursuant to this permit entered into a contract with J. F. Heard to build the cabins.

When the contractor began to lay out the tourist camp and to break ground for its construction, Mr. Collie, the owner of the property, was notified by the Ouachita Home Site & Realty Company, Inc., through its attorney, that a tourist camp was a commercial enterprise, the operation of which was prohibited by the building restrictions governing the subdivision, and he was called upon to abandon the construction thereof. This Mr. Collie refused to do, and this suit followed.

Plaintiff in its petition set out the facts, alleged the validity of the building restrictions, and prayed for an injunction to prohibit the defendants, Collie, as owner, and Heard, as contractor, from violating them.

The defendants, in their exceptions and answers, set up various grounds of defense to plaintiff's action. They averred that the building restrictions relied on by plaintiff were not valid and were not a covenant running with the land; that the defendant Collie had not agreed to the restrictions, and hence they were not binding on him; and that as the owner of the property he had the right to exercise the full and perfect ownership thereof. Defendants specially alleged that the building restrictions were invalid as being an attempt on plaintiff's part to establish a trust estate, to take property out of commerce perpetually, and to create a tenure of property unknown to our law. Defendants further pleaded that the plaintiff was estopped from enforcing the building restrictions, because it had abandoned its rights therein, and had permitted the character of the subdivision to be changed from a residential district to a commercial and business district.

After a hearing on a rule nisi on the various pleas and exceptions set up by the defendants, plaintiff's right to injunctive re-

lief was recognized and a preliminary injunction was ordered to issue upon plaintiff furnishing the required bond. At the later hearing of the case on its merits the preliminary injunction was made permanent. From that judgment, defendants have appealed.

■■■■ The case is governed by the decisions of this court in the cases of Queensborough Land Company v. Cazeaux, 136 La. 724, 67 So. 641, 643, L.R.A.1916B, 1201, Ann.Cas.1916D, 1248 and Hill v. Wm. P. Ross, Inc., 166 La. 581, 117 So. 725.

The defenses raised in this case are the same defenses that were raised in the Queensborough Case. In that case, the questions presented were exhaustively considered and the right of an owner to restrict the use of real property was maintained.

In the Queensborough Case, it was expressly held that such restrictions in contracts between individuals are not unlawful in this state; that they are not personal to the vendor, but inure to the benefit of all the other grantees under a general plan of development, are covenants running with the land, and create real, as distinct from personal, obligations. This holding was approved and reaffirmed in the Hill Case. In both cases it was further held that a writ of injunction was the proper remedy to enforce the restrictions.

Defendants cite the case of Female Orphan Society v. Young Men's Christian Association, 119 La. 278, 44 So. 15, 12 Ann. Cas. 811, in support of their argument that the building restrictions involved in this case are unreasonable and invalid as creating a tenure of property unknown to our law and contrary to public policy.

But defendants' argument overlooks the distinction between a restraint upon the use of property and a restraint upon its alienability. In the Female Orphan Society Case, the court was dealing with a perpetual restraint to alienate the property, which the court held was an impossibility; whereas in the Queensborough and Hill Cases the court was dealing with a restraint upon the use of the property, which the court held was a possibility. The questions presented in the Female Orphan Society Case were considered in the Queensborough Case and differentiated from the questions presented in that case.

■■■■ While a condition of perpetual inalienability of real estate under our law is void as putting property out of commerce and contrary to public policy, there is nothing in our law which forbids contracts for the use or nonuse of real estate, provided the use or nonuse of the property be not contrary to good morals or the public welfare. This is clearly recognized in the Queensborough Case, in which the court stated:

"To the second question we answer that, while the public policy of the state opposes the putting of property out of commerce, it at the same time favors the fullest liberty of contract (article 1764, C.C.) and the widest latitude possible in the right to dispose of one's property as one lists (article 491, C.C.), so long as no disposition is sought to be made contrary to good morals, public order, or express law."

In the case of Voinche v. Town of Marksville, 124 La. 712, 50 So. 662, 663, which was also referred to in the Queensborough Case, this court held to be valid and enforceable a donation of property for a particular use. In so holding, and in sustaining plaintiff's action to annul the donation for a violation of the restriction upon the use of the property, the court said:

"The fact that the grant was in perpetuity does not exclude the particular purpose of the donation, as a perpetual use is perfectly consistent with a perpetual grant."

And further:

"It is a principle of civil-law jurisprudence that the donee is bound to execute the charges or obligations imposed on him by the act of donation in the same manner and to the same extent as the debtor in any ordinary contract."

■ Restrictions upon the use to which real property may be put may be likened to servitudes which are specifically recognized and provided for under the Code, and it cannot be disputed that a servitude legally established and valid in character is enforceable. Article 709 of the Civil Code provides in part:

"Owners have a right to establish on their estates, or in favor of their estates, such servitudes as they deem proper; provided, nevertheless, that the services be not imposed on the person or in favor of the person, but only on an estate or in favor of an estate; and provided, moreover, that such services imply nothing contrary to public order."

And Article 728 of the Civil Code expressly recognizes the validity of a servitude similar in character to the restrictions sought to be enforced in this case. The Codal article provides:

"Again, servitudes are either visible and apparent or nonapparent.

"Apparent servitudes are such as are to be perceivable by exterior work; such as a door, a window, an aqueduct.

"Nonapparent servitudes are such as have no exterior sign of their existence; such, for instance, *as the prohibition of building on an estate, or of building above a particular height.*" (Writer's italics.)

Under the jurisprudence and Codal articles to which we have referred, we do not think it can be disputed that building restrictions which restrain the use of real property for commercial purposes by prohibiting the construction of any building other than a residence or residences, and which insure a high type of construction by placing a minimum value upon any residence that may be built thereon, are not unreasonable and are not contrary to good morals, public order or express law, and, hence, they are not invalid and unenforceable, since the restrictions are upon the use and not upon the alienability of the property.

■ There is nothing in the record to support defendants' plea of estoppel. The filling station to which defendants refer is owned by plaintiff and leased to the Louisiana Oil Refining Corporation. The testimony shows that this filling station was

constructed by plaintiff before any lots whatever were sold in the subdivision, and that, as a matter of fact, the desire of plaintiff to acquire that particular location for a filling station was the primary object plaintiff had in view in purchasing the property out of which the subdivision was subsequently created. The record also fails to sustain defendants' claim that plaintiff had abandoned its scheme for the development of the subdivision as an exclusive residential section by permitting other purchasers of lots to construct residences of less than $3,000 in value, and to erect commercial buildings and operate commercial enterprises on the property.

For the reasons assigned, the judgment appealed from is affirmed.