53 So.2d 503 (1951)
TUCKER et al.
v.
WOODSIDE.
No. 3404.
Court of Appeal of Louisiana, First Circuit.
June 29, 1951.
*504 Ashton L. Stewart, Baton Rouge, for appellant.
Jess Johnson, Baton Rouge, for appellee.
ELLIS, Judge.
On December 20, 1943, Mrs. Lillie B. Roberts purchased from Robert I. Woodside and Woodside Realty Co., Inc. and the defendant, Edward L. Woodside, a 550 acre farm, and in the act of sale there was a stipulation limiting and restricting the use of this land as follows: "And now the said purchaser hereby binds and obligates herself unto the said Edward L. Woodside, never to build or permit the building of any saloon, nightclub or tourist court upon the property herein conveyed."
The same deed contained a further stipulation that: "All the agreements and stipulations contained herein and all the obligations herein assumed, shall inure to the benefit of and be binding upon the heirs, successors and assigns of the respective parties hereto."
Mrs. Roberts sold this land with warranty of title to the plaintiff, Charles G. Phares, but without any restrictions, and Phares agreed to sell the land to the plaintiff, John W. Tucker. Because of the presence of the above quoted stipulations in the deed to Mrs. Roberts, Tucker would not accept title until a contract had been entered into by which it was agreed between Phares and Tucker that if necessary a suit would be filed in both their names against Edward L. Woodside for a judgment of Court annulling the restrictive covenant. Hence the present suit.
The main issue tendered in the lower court and in this court is the plea of estoppel set up by the defendant in its answer in the following language: "That the recordation of the deed from the Woodside Realty Company, Inc., and Robert I. Woodside to Mrs. Lillie S. Roberts at Conveyance Book 555, page 403 of the public conveyance records of this parish, and the recordation of the restrictive covenant quoted below in Article 11 of this answer, which covenant forms a part of said deed, served as public notice to any future purchaser or owner of the said property, and notice to any future successor to and/or assignee of the said Mrs. Lillie S. Roberts, and therefore, the said Charles G. Phares and the said John W. Tucker took title to and possession of the said property with actual and constructive notice of the said covenant and subject to the restrictions on the use of the said property as provided in said covenant. Therefore, the said Charles G. Phares and the said John W. Tucker are thereby estopped to deny that the stipulation contained in the deed to Mrs. Lillie S. Roberts and quoted in Article 11 below is a restrictive covenant running with the land and binding upon them, which estoppel respondent hereby specially pleads."
As stated by the learned judge of the District Court in a well-considered written opinion and also by the Supreme Court, 218 La. 708, 50 So.2d 814, when the matter was before it on the question of jurisdiction, the only issue presented was whether the quoted stipulation contained in the deed to Mrs. Roberts was a real or personal obligation. The District Court held that the stipulation was a real right and that the obligation of the vendee was a real obligation which was binding upon the plaintiffs herein and all subsequent owners of the land conveyed.
From this judgment the plaintiffs have appealed.
The following articles of the Revised Civil Code to be considered in arriving at a decision are:
Article 2012:
"Real obligations may be created in three ways:
"1. By the alienation of immovable property, subject to a real condition, either expressed or implied by law.
"2. By alienating to one person the immovable property, and to another, some real right to be exercised upon it.
"3. By the creation of a right of mortgage upon the immovable property.
"All these contracts give rise to obligations purely real on the part of those who acquire the land, under whatever species of title they possess it; they are not personally liable, but the real property is, and, by *505 abandoning it to the obligee, they relieve themselves from all responsibility.
"A sale subject to a rent charge, or to a right of redemption as consideration of the sale, are examples of the first kind of obligations; servitudes, the right of use and habitation and usufruct, are examples of the second; and the several kinds of mortgages, and the creation of a rent charge, of the third."
Article 2013:
"The real obligation, created by condition annexed to the alienation of real property, is susceptible of all the modifications that the will of the parties can suggest, except such as are forbidden by law. These conditions are either conditions precedent, which suspend the operation of the contract until they are performed, or subsequent and resolutory, which unless they are performed, annul the contract. These will be more fully defined in the section which treats of conditional obligations."
Article 2015:
"Not only servitudes, but leases and all other rights, which the owner had imposed on his land before the alienation of the soil, form real obligations which accompany it in the hands of the person who acquires it, although he have made no stipulation on the subject, or they be not mentioned in the act of transfer. The purchaser may, if the circumstances permit it, have relief against the seller for concealment of such charges; but the law establishes the rule that no one can transfer a greater right than he himself has, except where the neglect of some formality required by law has subjected the owner of the real incumbrance to a loss of his right, in favor of a creditor or bona fide purchaser."
If the illustrations given under Article 2012 are exclusive then the stipulation herein would not be a real obligation. However, the judge of the district court was of the opinion that they were not exclusive and not intended to be so when viewed in the light of Article 2013 and Article 2015 of the Revised Civil Code, supra. We agree with the lower court in this conclusion and believe that the jurisprudence will also sustain this view. For example, under Article 2015, "Not only servitudes, but leases and all other rights, which the owner had imposed on his land before the alienation of the soil, form real obligations which accompany it in the hands of the person who acquires it * * *." This very definitely sustains the position that the illustrations under Article 2012 are not exclusive. (Emphasis added.) We also see that by the express terms of Article 2013, "The real obligation, created by condition annexed to the alienation of real property, is susceptible of all the modifications that the will of the parties can suggest, except such as are forbidden by law. * * *"
Mrs. Roberts did not acquire by her deed the full, free and unrestricted use of the land, for she accepted title for herself, her heirs and assigns with the prohibition that the land could never be used "to build or permit the building of any saloon, nightclub or tourist court upon the property herein conveyed." Also, under the express terms of the deed, the restrictive covenant enured to the benefit of and was binding upon the heirs, successors and assigns of Mrs. Roberts. Under Article 2015 of the Civil Code, Mrs. Roberts could not transfer a greater right than she herself had acquired, and she had not acquired the right to use the property for a saloon, nightclub or tourist court. The restrictive stipulation was not forbidden by law and was binding upon Mrs. Roberts and all subsequent purchasers.
Our Supreme Court has held in Ouachita Home Site & Realty Co. v. Collie, 189 La. 521, 179 So. 841, 842, as follows:
"While a condition of perpetual inalienability of real estate under our law is void as putting property out of commerce and contrary to public policy, there is nothing in our law which forbids contracts for the use or nonuse of real estate, provided the use or nonuse of the property be not contrary to good morals or the public welfare. This is clearly recognized in the Queensborough Case [Queensborough Land Co. v. Cazeaux, 136 La. 724, 67 So. 641, *506 L.R.A.1916B, 1201], in which the court stated:
"`To the second question we answer that, while the public policy of the state opposes the putting of property out of commerce, it at the same time favors the fullest liberty of contract (article 1764, C.C.) and the widest latitude possible in the right to dispose of one's property as one lists (article 491, C.C.), so long as no disposition is sought to be made contrary to good morals, public order, or express law.'

* * * * * *
"Restrictions upon the use to which real property may be put may be likened to servitudes which are specifically recognized and provided for under the Code, and it cannot be disputed that a servitude legally established and valid in character is enforceable. Article 709 of the Civil Code provides in part:
"`Owners have a right to establish on their estates, or in favor of their estates, such servitudes as they deem proper; provided, nevertheless, that the services be not imposed on the person or in favor of the person, but only on an estate or in favor of an estate; and provided, moreover, that such services imply nothing contrary to public order.'
"And Article 728 of the Civil Code expressly recognizes the validity of a servitude similar in character to the restrictions sought to be enforced in this case. The Codal article provides:
"`Again, servitudes are either visible and apparent or nonapparent.
"`Apparent servitudes are such as are to be perceivable by exterior work; such as a door, a window, an aqueduct.
"`Nonapparent servitudes are such as have no exterior sign of their existence; such, for instance, as the prohibition of building on an estate, or of building above a particular height.'
"Under the jurisprudence and Codal articles to which we have referred, we do not think it can be disputed that building restrictions which restrain the use of real property for commercial purposes by prohibiting the construction of any building other than a residence or residences, and which insure a high type of construction by placing a minimum value upon any residence that may be built thereon, are not unreasonable and are not contrary to good morals, public order or express law, and, hence, they are not invalid and unenforceable, since the restrictions are upon the use and not upon the alienability of the property."
The restriction in the instant case is not contrary to good morals, public order or express law and was "legally established and valid in character" and is enforceable. The restrictive stipulation being considered was not in favor of Mrs. Roberts personally but was to run with the land or was a restriction upon the use of the land and was binding not only upon Mrs. Roberts but upon all future owners.
In the above cited case the restriction sought to be enforced was not written in the deed by which the defendant acquired the property but was contained in a prior link in the chain of title, which is the same fact as in the instant case.
The Case of Ouachita Home Site & Realty Co. v. Collie, supra, was cited with approval and quoted extensively in the case of Holloway v. Ransome, 216 La. 317, 43 So.2d 673. This case also specifically holds that a restrictive covenant is enforceable when not contrary to good morals or public welfare and can be established by title.
Counsel for plaintiff relies upon the case of Cambais v. Douglas, 167 La. 791, 120 So. 369, 371, to support his contention that the stipulation in question is a personal and not a real obligation. In that case, the purchaser bound herself to erect a single residence on the land purchased. Defendants contended that the obligation assumed by Mrs. Skinner subjected the lots to a real condition binding upon subsequent purchasers. In discussing the question, the Court stated:
"Even if the contention of defendant be true as to the consideration of the sale, the obligation assumed by Mrs. Skinner is purely a personal one, since in the deed `she binds herself to erect on said premises a single residence.' This is the full extent *507 of her obligation; no more and no less.
"By her agreement with defendant, Mrs. Skinner obligated herself to him to do a certain thing, expressed in the agreement. R.C.C. art. 1761.
"`A personal action lies against him who has bound himself towards another, personally, and independently of the property which he possesses.' C.P. art. 26.
"An obligation to build a house is a personal one only, and does not bind the subsequent transferees of the property, who are not parties to the agreement.
"In binding herself to construct a single residence on the property, Mrs. Skinner by no means entered into an obligation that her assigns should not erect a duplex or triplex on the premises. Hers was an obligation to do a certain thing, and not an obligation to refrain from doing some other thing. The obligation she assumed was not a prohibitive one, but strictly one of specific performance, and limited to her and her heirs." (Emphasis added.)
It will be noted that the Court specifically held that "Mrs. Skinner by no means entered into an obligation that her assigns should not erect a duplex or triplex on the premises." (Emphasis added.)
In the case at bar, Mrs. Roberts entered into an obligation binding herself, her heirs, her successors and her assigns.
Counsel for the plaintiffs also relies upon the case of LeBlanc v. Palmisano, La. App., 43 So.2d 263, 265, in which the Court had before it the question of the real or personal nature of the following restrictions: "no commercial property shall be permitted to be constructed or occupied as such on this property except by written consent of the Claiborne Avenue Extension Realty Company, Inc." The Court stated:
"In our opinion, however, a casual reading of this restriction indicates that it is not a covenant running with the land, but is a personal covenant between the vendor, Claiborne Avenue Extension Realty Company, Inc., and Henry M. Rahders, the predecessor in title of defendants.
"A covenant runs with the land when not only the original parties or their representatives, but each successive owner of the land, will be entitled to its benefit, or be liable, as the case may be, to its obligations. It is so called when either the liability to perform it or the right to take advantage of it passes to the assignee of the land. Real covenants relate to realty and have for their main object some benefit thereto, inuring to the benefit of and becoming binding on subsequent grantees, while personal covenants do not run with the land. Whether or not certain property in this subdivision shall be used for commercial purposes is contingent entirely upon the caprice of the Claiborne Avenue Extension Realty Company, Inc., and, therefore this covenant did not run with the land for the benefit of the purchasers or grantees of property in this subdivision."
Applying the rule as laid down in that case to the facts in the present case, the stipulation in question can be none other than a real obligation, for not only Mrs. Roberts but each successive owner of the land (her heirs, successors and assigns) are liable, that is, bound by the obligation expressed in the stipulation, for the liability to perform the obligation passed under the express terms of the deed to each purchaser or assignee of the land.
When the stipulation restricting the use of the property was placed in the deed to Mrs. Roberts and by express further stipulation enured to the benefit of and was binding upon the heirs, successors and assigns of the respective parties thereto, it not only evidenced an intention on the part of both parties to create a real obligation but it did so create one.
Counsel for plaintiffs in his brief further contends that the stipulation is invalid if other than a personal obligation. Counsel seems to base this contention upon the statement of the Supreme Court in the case of Frost-Johnson Lbr. Co. v. Salling's Heirs, 150 La. 756, 91 So. 207, 245, viz:
"Now the right to establish a servitude in favor of a person and his heirs seems to be forbidden by C.C. arts. 646, 709. But, on the other hand, it seems to be allowed by C.C. arts. 607, 758, 2013.
"And with these conflicting provisions before us we cannot say that the law clearly *508 prohibits the creation of a servitude upon lands in favor of a person and his heirs. And hence the intention of the parties should govern in such matters."
We do not believe this statement applicable to the facts in the present case, but rather the statement of the Court in the preceding paragraph to the effect that: "But, in the matter of burdening his lands with some real obligation in favor of a person and his heirs, there is not the least doubt that the owner can do so unless some positive law prohibits it."
Judgment affirmed.