AYRES, Judge.
This is an appeal by defendants from a declaratory judgment holding that certain restrictions established on the property of plaintiff prior to his acquisition are null, void, and of no effect, not binding on him, and declaring said property clear and free of any restriction, conditioned on its sale or use. The restrictions made the subject of this action were against the sale, transfer, or use of the property for other than residential purposes.
The facts material to the issues presented by this action for resolution may be briefly stated. Prior to June 13, 1922, the late Guy P. Stubbs was the owner of a plot of ground in the City of Monroe forming a part of Guy P. Stubbs Addition to the City of Monroe, and located in the northeast corner of Stubbs Avenue and North Third Street, measuring 160 feet square. On the date aforesaid, Stubbs sold, from said plot, a lot measuring 60 feet front on Stubbs Avenue, located 100 feet from and east of North Third Street, by a depth of 160 feet more or less, located between parallel lines, to Solomon S. Goldman, the vendor retaining title to the corner lot thus reduced to a frontage of 100 feet on Stubbs Avenue. Simultaneously and contemporaneously with the execution of the aforesaid sale, a notarial agreement, creating and establishing the restrictions referred to, was entered into between Stubbs and Goldman, which agreement was duly recorded in both mortgage and conveyance records of Ouachita Parish, Louisiana.
Additional facts preceding institution of this action may also be summarized. A residence erected on the Goldman lot more than 30 years ago has been continuously occupied as such by members of his family. No improvements have ever been erected on the corner lot, the property retained by Stubbs and now owned by plaintiff. Goldman conveyed the aforesaid 60-foot lot, acquired by him from Stubbs, to his mother, Mrs. Cora S. Goldman, in 1924. At her death, the property was inherited by Goldman and his two sisters, to whom he, in 1927, conveyed his interest and who are the present defendants. They have held title ever since, and one of them, Mrs. Jessie Goldman Weil, continues to reside in the home.
Stubbs sold the aforesaid corner lot, retained by him when selling to Goldman, to the Ouachita National Bank of Monroe, in 1932, and that bank, while in liquidation, sold the lot, in 1945, to plaintiff B. I. Mc-Guffy. In neither deed was there any mention of the restrictions placed in 1922 against the property’s use.
January 12, 1959, more than 13 years after his acquisition, plaintiff instituted this action against the present owners of the former Goldman lot. An exception of no cause of action was filed by defendants and overruled, following which they answered, and, all the facts having been stipulated, the matter was submitted to the court on its merits. From a judgment in favor of plaintiff, as prayed for, this appeal is taken.
The judgment of the trial court, both on the exception and on the merits, was predicated upon the conclusion that the aforesaid contract between Stubbs and Goldman, *361 creating the restrictions, was a personal contract between them, did not constitute a covenant running with the land and was therefore neither a servitude nor a real obligation. Defendants’ exception of no cause of action, right to which was preserved by their appeal, was predicated (1) upon the fact that the aforesaid contract and agreement of June 13, 1922, between Stubbs and Goldman, referred to in plaintiff’s petition, and a certified copy of which was attached thereto, was recorded in both conveyance and mortgage records of Ouachita Parish, Louisiana, prior to plaintiff’s acquisition of the land involved and now owned by him; (2) that said contract expressly recited that the restrictions thereby created would constitute covenants running with the land and would be binding upon Stubbs, the then owner of the property, and all subsequent owners thereof, howsoever they might acquire; and (3) that whether plaintiff had actual knowledge of the contract and the restrictions created thereby at the time of his acquisition is immaterial as he nevertheless acquired said property subject to said restrictions, even in the absence of any reference thereto in his deed of acquisition, as he is bound by the recitals of the public records
Plaintiff’s attack upon the aforesaid restrictive convenants is predicated upon the contentions (1) that the contract was personal, not a covenant running with the land; (2) that Stubbs’ action in his failure to refer to the restrictions in the deed to the Ouachita National Bank constituted nothing less than a violation of his, Stubbs’, personal obligation to Goldman, thus divesting himself of the property without restraint as to its use; (3) that no restriction is contained in plaintiff’s chain of title emanating from Stubbs; (4) that there was no mutuality or reciprocity in the aforesaid contract inasmuch as Goldman acquired his lot free of restrictions as to nonresidential use; and (5) that said restrictive covenants never acquired any force or effect, but were, at the time of their confection, extinguished by confusion in that Stubbs then owned both dominant and servient estates.
The record reveals that the aforesaid contract between Stubbs and Goldman and the deed of even date from Stubbs to Goldman were filed for record at 4:11 p. m. and 4:12 p. m., respectively, June 13, 1922, and duly recorded in the conveyance records ; the contract was additionally recorded in the mortgage records of Ouachita Parish, Louisiana.
Through stipulations and the documents and exhibits attached thereto, it was established that, while some commercial enterprises exist in the vicinity, some of which are conducted from homes or converted residences, the area remains primarily a residential section of the City of Monroe. No commercial enterprise is established on the side of Stubbs Avenue where these lots are located.
The issues presented for determination are questions of law. Primarily, the decisive issue is whether the aforesaid restrictive covenants constitute real obligations. To sustain their validity, defendants principally rely upon the provisions of LSA-C.C. Art. 2015 and other appropriate provisions of the Civil Code, to which reference will be hereinafter made. Likewise cited is Tucker v. Woodside, La.App., 53 So.2d 503, as well as Queensborough Land Co. v. Cazeaux, 136 La. 724, 67 So. 641, L.R.A.1916B, 1201; Ouachita Home Site & Realty Co. v. Collie, 189 La. 521, 179 So. 841. The cited codal provision reads as follows:
“Not only servitudes, but leases and all other rights, which the owner had imposed on his land before the alienation of the soil, form real obligations which accompany it in the hands of the person who acquires it, although he have made no stipulation on the subject, or they be not mentioned in the act of transfer. The purchaser may, if the circumstances permit it, have relief against the seller for concealment of such charges; but the law *362 establishes the rule that no one can transfer a greater right than he himself has, except where the neglect of some formality required by law has subjected the owner of the real incum-brance to a loss of his right, in favor of a creditor or bona fide purchaser.”
LSA-C.C. Art. 709 provides that owners have the right to establish, on their estates, or in favor of their estates, such servitudes as they deem proper. Restrictive covenants, such as claimed here, are continuous and nonapparent in character (LSA-C.C. Arts. 727 and 728) and may be established or created by all acts by which property can be transferred (LSA-C.C. Art. 743) ; and, where the servitudes are continuous, nonapparent, or discontinuous, whether apparent or not, they can only be established by title (LSA-C.C. Arts. 766 and 770), such as in the case of transfer of title to immovable property. Long-Bell Petroleum Co., Inc., v. Tritico, 216 La. 426, 43 So.2d 782, 791; Goldsmith v. McCoy, 190 La. 320, 182 So. 519; Hanby v. Texas Co., 140 La. 189, 72 So. 933.
A servitude may be established or acquired in favor of an estate which does not exist or of which one is not then the owner (LSA-C.C. Art. 747), and LSA-C.C. Art. 754 provides that where the act establishing the servitude fails to declare whether the right is given for the benefit of an estate or to a person who is the owner of the estate, consideration must then be given as to whether the right granted be of a real advantage to the estate or one merely of personal convenience to the owner (LSA-C.C. Art. 755), and, if the right granted be of a nature to assure a real advantage to an estate, it is to be presumed that such right is a real servitude, although it may not be so styled. Even if the concession, from its nature, is a matter of personal convenience, it is considered personal but nevertheless may be made real by express declaration of the parties. LSA-C.C. Art. 757. Moreover, when obligations are attached to immovable property, they become real obligations (LSA-C.C. Art. 2010) and pass with the property (LSA-C.C. Arts. 2011, 2015).
With the aforesaid principles in mind, consideration is next directed to the provisions of the aforesaid contract between Stubbs and Goldman. Prior to Goldman’s purchase, Stubbs owned the entire plot situated at the northeast corner of Stubbs Avenue and North Third Street in the City of Monroe. Goldman’s purchase of a portion of the plot was for residential purposes, as evidenced by the erection of a residence thereon and its occupancy ever since as such.
That the erection and operation of commercial establishments, not only adjacent to residential property but in the immediate vicinity thereof, sometimes adversely affect the use and enjoyment of one’s home is a matter of common knowledge. To guard against and prevent the obnoxious use of the adjacent lot and to preserve and protect the full enjoyment of the use of his own lot, Goldman secured from Stubbs the aforesaid restrictive covenants.
 That the agreement constituted a real obligation, not merely presumed so under the aforesaid provisions of the Civil Code, but expressly made and characterized such by the explicit declaration of the parties, is thoroughly established by the clear, positive, and unambiguous language used by the parties. No room for doubt exists.
In brief and oral argument, plaintiff concedes that such restrictions could have been established under the authority of the provisions of Art. 2015 of the LSA-Civil Code, but contends that the assertion that he could have done so does not make it true. It is thus asserted the contract constituted no more than an agreement on Stubbs’ part that he would, in any future sale of the property retained by him, incorporate in the deed or conveyance a restriction as contemplated in the agreement, but that, *363 nevertheless, when he subsequently sold the property, he failed to do so. Hence, it is claimed, plaintiff acquired the property free and clear of any restriction. This position is predicated upon the all-inclusive language of the agreement wherein it is recited that the property “ * * * shall never he sold, transferred or used except subject to the following limitation and restriction to-wit: —That such property shall only be used for residential purposes * * (Emphasis supplied.) This language makes the intention of the parties clear that the property would not only never be sold or transferred but would never be used except for residential purposes. Should the instrument have only recited that the property shall never be sold or transferred other than for residential purposes, there would possibly be some basis for plaintiff’s contention. The use of the triple words “sold, transferred or used” was designed to he all-inclusive and applicable to any event, condition or contingency. When one of the words clearly and unmistakably expresses the intent of the parties as to a given situation or condition, the other two words, designed for other and different contingencies, do not detract therefrom or make ambiguous that which is certain. The use of triple words is apparently characteristic of the legal profession. Often are found, in legal documents, phrases such as “grant, bargain and sell,” “convey, transfer and deliver,” and “will give and bequeath,” when usually one of the three words is adequate.
Of the cases cited, the Queensborough Land Co. and Ouachita Home Site & Realty Co. cases dealt with large subdivisions where the restrictions were uniform, not previously violated and, hence, enforced.
The Tucker case is only distinguishable from the instant case in that the restrictions were there incorporated in deeds to the lands of the violators of the restrictions rather than, as in the instant case, contained in a separate recorded instrument. This is a distinction without a difference. The pronouncements in the Tucker case find appropriate application here as it was there held that an owner may burden his land with real obligations, in favor of a person and his heirs in the absence of some positive prohibitory law, and that when obligations are attached to immovable property, they become real obligations. LSA-C.C. Art. 2010.
The restriction, servitude, or real obligation involved here was established and created by the agreement between Stubbs and Goldman, which instrument was duly filed for and recorded in the mortgage and conveyance records. By such recordation this instrument restricted Stubbs’ title so far as the use of the property is concerned. Plaintiff could acquire no greater right than his authors and vendors in title in conformity with the general rule that no one can transfer a greater right than he himself has except such as by failure to place an instrument of record, in which event the owner of the encumbrance would become subject to the loss of his right in favor of one purchasing or acquiring rights on the faith of the public records. LSA-C.C. Art. 2266. See also Art. 2015.
Under the provisions of the latter article, an owner may impose a real obligation, whether in the nature of a servitude or restriction, on his land while ownership is still vested in him, or, as this article provides, “ * * * before the alienation of the soil, * * Thus, it need not be necessarily established by a deed, or created in an act of sale.
Nor, under the plain provisions of this article, is the omission of any reference to the restrictions in the deed from Stubbs to the bank, or in the deed from the bank to plaintiff, material, for, as therein provided, real obligations accompany the land in the hands of the person who acquires it, although no mention thereof be made in the act of transfer.
*364 Nor, do we find any merit in plaintiffs position that, in the absence of a general and uniform pattern of restrictions, such as is usually provided for the development of a subdivision, restrictive covenants may be only created or established by an act of sale or a deed. The restrictions were created by an instrument duly recorded. This constituted an encumbrance on the title later acquired by plaintiff.
The real obligation created by Stubbs as plaintiff’s author in title and duly recorded was just as effective against Stubbs’ ven-dees and subsequent parties as if said instrument had constituted a mortgage.
Plaintiff has cited, in support of his contentions, these cases: Begnaud v. Hill, 109 So.2d 562; Chexnayder v. Rogers, La.App., 95 So.2d 381; Holloway v. Ransome, 216 La. 317, 43 So.2d 673; Murphy v. Marino, La.App., 60 So.2d 128; Herzberg v. Harrison, La.App., 102 So.2d 554.
From our review of these authorities, we find no pronouncements contrary to the views herein expressed.
The Begnaud case is not in point. The property involved was not contained within the geographical limits of the area subject to the restrictions. Plaintiffs, who, with one exception, owned no property in the subdivision, were without interest and not entitled to maintain the action. Moreover, the court found that defendant’s property was never intended to be a part of the subdivision or subject to the restrictions.
The holding in the Chexnayder case was that stipulations contained in restrictive covenants are stricti juris and that every doubt should be resolved in favor of the unencumbered use of the property. The violations had persisted for a period exceeding two years, and, as to such violations, a plea of prescription under LSA-R.S- 9:5622 was sustained.
In the Holloway case plaintiff relied principally on the restriction against the use of property for commercial purposes, contained in his own deed from Dryades Building & Loan Association, and did not trace his title back to John G. Kostmayer, the original owner and subdivider of the tract of land known as Kostmayer Subdivision. On the other hand, defendants’ titles emanated from the original owner and in none of those deeds were there any restrictions or prohibitions against the use of the property. The court held defendants were not bound by restrictions which did not appear in their title. That holding is not inconsistent with the conclusions we have reached in the instant case because, as pointed out, the restrictions sought to be avoided by plaintiff are contained in a recorded instrument forming a part and parcel of plaintiff’s chain of title.
In the Murphy case, there was no general scheme, plan or uniformity as to restrictions as to the 137 lots contained in a subdivision. Some lots were limited to one dwelling, others to two, or more, and still others were without limitation whatsoever. Restrictions once established were later amended or corrected by the original sub-divider to permit more than one dwelling on a lot, after which the subdivider dissolved, preventing others from receiving like consideration and creating an intolerable situation favorable to those acting early and prejudicial to those who later sought amendments and corrections.
In the Herzberg case, an injunction was sought against defendants who had violated certain restrictive covenants which did not -appear in the chain of title of half of the lots of the subdivision for which no general plan of the subdivision or restrictions had been recorded. The existence of restrictive covenants for which compliance was sought was not established.
Plaintiff lastly complains of the absence of reciprocity between Stubbs and Goldman in the confection of the contract as to the restrictive covenants. The basis of this contention is that Stubbs and his vendees were restricted in the use of the *365 property, whereas no such restriction was imposed on the property acquired by Goldman and now owned by the defendants. This contention is without merit. No authority is cited to support such a proposition. However, as between the parties, mutuality was shown; the contract evidences that it was executed for a valuable consideration.
For the reasons herein assigned, we conclude, and so hold, that the restrictive covenants established and created by the contract of June 13, 1922, are real obligations, valid and subsisting as to plaintiff’s property, and, accordingly, accompany the property so encumbered in view of their recordation, notwithstanding the absence of reference thereto in conveyances executed subsequently to such rec-ordation. This covenant was effective, according to its terms, as to Stubbs, “his assigns, heirs and. executors, as well as all future owners * * * thereof howsoever they may acquire.” Plaintiff is accordingly bound.
Accordingly, the judgment appealed is annulled, avoided, reversed and set aside; and it is now ordered, adjudged and decreed that the restrictive covenants, real obligations or servitudes created and imposed by that certain contract between Guy P. Stubbs and Solomon S. Goldman, dated June 13, 1922, and recorded in Book “114,” page 37 of the Conveyance Records, and Book “93,” page 510 of the Mortgage Records of Ouachita Parish, Louisiana, and covering the following-described property, to-wit:
A lot in Square 8 of Stubbs Addition to the City of Monroe, Louisiana, commencing at the intersection of the East line of Third Street with the North line of Stubbs Avenue, and fronting thence in an easterly •direction 100 feet along the North line of Stubbs Avenue and running back between parallel lines, one of which is the East line ■of Third Street, a distance of 160 feet, more or less, to an alley, be and the samé are hereby recognized and decreed in full force and effect, and that, accordingly, said property, as therein and as herein-above described, shall only be used for residential purposes and as provided in said contract.
It is further ordered, adjudged and decreed that the plaintiff-appellee pay all costs, including the cost of this appeal.
Reversed and rendered.