McBRIDE, Judge.
At the suit of the respective owners of lots 6, 7 and 21, of square 10, Ferndale Subdivision, as extended, an injunction was issued against the defendants who are the-owner, its lessee and the latter’s sublessee of lots 6 and 7 of square 9, said subdivision, restraining, prohibiting and enjoining said defendants or any one of them or anyone *756 acting in their behalf, from using or permitting to he used said lots 6 and 7, square 9, for the purpose of parking vehicles thereon, or for any purpose other than residential. Plaintiffs allege that there are certain prevailing restrictions bearing against all lots in the subdivision one of which is that: “All lots of Ferndale Subdivision, as extended, shall be used for residential purposes only. * * * ” and that said restriction is being violated by National Food Stores of Louisiana, Inc., which is said to be utilizing lots 6 and 7 for customer parking in conjunction with its business enterprise.
Defendants have appealed from the judgment ordering the issuance of the injunction.
On December 1, 1954, per act before Robert R. Ramos, Notary Public in and for the Parish of Orleans, registered in COB 369, folio 393, all of the then owners of all property within Ferndale Subdivision, as extended, mutually agreed to and did impose upon all lots located in the ten squares comprising the subdivision, certain “protective covenants which shall run with the land” (among which is the above quoted restriction against using any of the lots except for residential purposes). The notarial act provides that the protective covenants shall be binding upon and enure to the benefit of the then land owners or any future owners of any of said lots, their heirs, executors or assigns.
Square 9, Ferndale Subdivision, as extended, is bounded by Sena Drive, Canal Street, Pamona Street and the east line of Elmeer Place; contained in said square is a portion of ground (measuring 12(7 front on Canal Street by a depth between equal and parallel lines with a front on Sena Drive of 375') which had been “reserved” for commercial purposes. The property thus reserved is exempt from and not covered by the protective covenants or restrictions. The remaining property in said square 9 not designated as commercial property is composed of seven lots numbered I to 7, both inclusive. Lots 6 and 7 of square 9 measure each 6(7 front on Sena Drive by 12(7 in depth, adjoining each other, lot 7 abutting the commercial property above referred to.
Defendant Simonson Investments, Inc., is the owner of lots 6 and 7, defendant Commercial Properties Development Corporation being the lessee threof, and the third defendant, National Food Stores of Louisiana, Inc., is the latter’s sublessee.
National Food Stores of Louisiana, Inc., as sublessee, is conducting a business in a building located on part of the commercial portion of square 9, and it, as sublessee thereof, is utilizing lots 6 and 7 which abut its building as part of its business activities. National Food Stores of Louisiana, Inc., is what is known as a “supermarket”, handling for retail sale all types of foods and such other merchandise as is usually found in such establishments.
National Food Stores of Louisiana, Inc., has caused the surface of lots 6 and 7 to be paved and painted on the pavement are stripes designating parking spaces for automobiles. It has erected a fence or barricade separating this area from the adjoining lot 5. It has equipped the premises with floodlights. The store operated by National Food Stores of Louisiana, Inc., is part of the Sena Mall in Jefferson Parish. The building has service doors located at the rear of the building. Minor deliveries of merchandise to the store are made through the front doors, but heavy deliveries involving such as meats, canned foods, etc., are delivered into the store through the rear doors. Motor tractors drawing trailers measuring 45 feet in length are used to transport the merchandise to the rear door of the store, and the manager of National Food Stores of Louisiana, Inc., testified that without the utilization of lots 6 and 7 of square 9, the store could not properly be serviced in the matter of heavy deliveries. The manager’s testimony shows that a vehicle could not reach the rear doors of the store from Elmeer Avenue and exit on Sena Drive unless passage were made *757 over lots 6 and 7. The evidence also points tip the fact that patrons of the supermarket park their cars on lots 6 and 7 and the cars remain so parked while the customers are shopping inside the establishment. It is matter of common knowledge that patrons of supermarkets, etc., carry their merchandise from the store, load the same into their automobiles and then depart.
No other conclusion can be reached than that National Food Stores of Louisiana, Inc., is making use of lots 6 and 7 of square 9 as an important adjunct of its store and that without the use of said lots its business would be greatly handicapped as was testified to by the manager. Thus, the sublessee in using said lots in its business is actively violating the restrictions thereon inasmuch as they provide: “All lots of Ferndale Subdivision, as extended, shall be used for residential purposes only”.
Lots 6 and 7 of the adjoining square 10 owned respectively by two of the plaintiffs are located directly across Sena Drive from lots 6 and 7 on which business is being conducted as aforesaid. Lot 21 of square 10, the owner of which appears as one of the plaintiffs, is located about 400 feet distant from lots 6 and 7 of square 9.
The plaintiffs are clearly entitled to invoke injunctive process against the three defendants to abate the violation. The notarial act by which the restrictive covenants were established provides:
“If the parties hereto, or any of them or their heirs or assigns, shall violate or attempt to violate any of the restrictions or covenants herein, it shall be lawful for any other person or persons owning any real property situated in said development or subdivision to prosecute any proceedings at law or in equity against the person or persons violating or attempting to violate any such covenant and either to prevent him or them from so doing or to recover damages or other dues for such violation.”
The owners of property in a subdivision have the right to impose restrictions on their land to further a general plan of development. Ouachita Home Site and Realty Co. v. Collie, 189 La. 521, 179 So. 841; Salerno v. De Lucca, 211 La. 659, 30 So.2d 678; Holloway v. Ransome, 216 La. 317, 43 So.2d 673; In Re Congregation of St. Rita Roman Catholic Church, La.App., 130 So.2d 425.
In Herzberg v. Harrison, La.App., 102 So.2d 554, it was said:
“Building restrictions, such as those in question, are valid and enforceable where inserted in deeds in pursuance of a general plan devised by the ancestor in title to maintain certain building standards; such restrictions inure to the benefit of all other grantees under a general plan of development and are real rights running with the land, which the grantees or their successors in title may enforce by injunction. Salerno v. De Lucca, 211 La. 659, 30 So.2d 678; Alfortish v. Wagner, 200 La. 198, 7 So.2d 708; Edwards v. Wiseman, 198 La. 382, 3 So.2d 661; Murphy v. Marino, La.App., 1 Cir., 60 So.2d 128; Munson v. Berdon, La.App., 1 Cir., 51 So.2d 157.”
The defense chiefly relied on is that lots 6 and 7 of square 9 are no longer encumbered by the above mentioned restriction limiting the use of the lots to residential purposes. Defendants say that on August 14, 1959, a majority of the lot owners (64 out of 120) privately executed a petition (registered in COB 485, folio 279) amending and modifying the nature of the restrictions bearing against lots 6 and 7 of square 9 so as to make same conform, with reference to parking, to the provisions of the “Zone of Transition” as described in the Planning and Zoning Ordinance of the Parish of Jefferson, State of Louisiana, with the result that the parking of automobiles on lots 6 and 7 of square 9 is now “especially allowed”.
Plaintiffs assail the validity of the purported amendment and modification on two *758 grounds: (1) that there was no notice to the property owners in Ferndale Subdivision, as extended, of a meeting and that no meeting was held by the parties to amend the restrictions as required by Article XIII of the original restrictions, and (2) that the owners of- a majority of the lots in the subdivision did not sign the petition of August 14; "1959.
In view of our conclusion that the first objection to the purported amendment is meritorious the second objection requires no consideration. Article XIII of the notarial act imposing the restrictions provides as follows:
“Any change in the above restrictions and covenants may be made only upon the affirmative vote in writing of the owners of a majority of the lots in Squares 9 through 18, both inclusive, above described," and then only after a written notice of a meeting to consider such changes shall have been given to all of the owners of said lots. This notice shall state the’nature of the change, the •time, date and place of the meeting. In voting each lot shall vote as one unit regardless of the number of owners thereof, provided, however, that no person shall vote as owner for more than ten lots at any one meeting.”
It is conceded that there was no meeting called to consider any change in the restrictions nor was there any notice given of any meeting and that the petition was passed around from hand to hand until it was thought a majority of the property owners had signed and then the document was recorded in the conveyance records. •
Our firm opinion is that the purported modification and amendment of the restrictions is without any legal force or effect and certainly could not be binding on any of the lot .owners who did not sign.
The contents of the notarial act of December 1, 1954, imposing the restrictions was á solemn agreement entered into by all of the' then lot owners, binding themselves, their heirs, successors and assigns. The act-established the method for changing or amending the restrictions. This agreement, legally entered into by the parties thereto,, has the effect of law on those who formed' it or are bound by it. R.C.C. art. 1901. A compliance with the 'provisions of Article-XIII of the act was sacramental in the-formation of an amendment to the restrictions. A noncompliance with the provisions of the article would have the effect; of depriving a lot owner of his vested right to attend a meeting, to discuss any proposition advanced thereat, and to urge his objection to any proposition "tendered.
We find no jurisprudence in this or any other jurisdiction in which the precise facts-were involved, but we believe that certain-cases in which the validity of the acts of a corporate board of directors was the issue-are analogous and controlling in the present situation.
In Jones v. Shreveport Lodge, 221 La. 968, 60 So.2d 889, plaintiffs sought specific-performance of their contract to buy .certain property from a fraternal organization. The court refused such relief, decreed the-nullity of the contract, and ordered its cancellation from the parish records, being-of the opinion that the meeting of the membership of the association at which the sale-was authorized was illegally held. The-court said:
“The Legislature, in adopting LSA-R.S. 12:113, prescribed that a meeting to consider business of this extraordinary character could be convened only after notice of its purpose. The statutory requirements are sacramental; failure to-comply therewith renders the resolution-under consideration void and of no effect, and strikes with nullity the ensuing contract.”
The Supreme Court in Jeanerette Rice & Milling Co. v. Durocher, 123 La. 160,. 48 So.. 780, said:
“In German Evangelical Congregation v. Pressler, 14 La.Ann. 799, 811, it was- *759 'held that courts of justice cannot regard -the wishes of a majority of the members of a corporation unless expressed in a valid form in conformity with the bylaws and charter; citing the case of St. Mary’s Church, In re, 7 Serg. & R. (Pa.) 517, 530. In Ross v. Crockett, 14 La.Ann. 811, 823, it was held that a majority of a board of trustees could not undertake to act in their individual names for the board itself.
“In Peirce v. New Orleans Building Co., 9 La. 347, 404, 29 Am.Dec. 448, it was held that where the assent of a .majority of the stockholders was not expressed in a meeting of stockholders, but by each one separately, at different times, and evidenced not by the corporate min>utes, but by a separate paper, the assent is without force.
“Directors can bind the corporation •only by acting together as a board. A majority of them cannot undertake to act in their individual names for the board itself. 10 Cyc. 774, 775.”
From New Orleans Building Co. v. Lawson, 11 La. 34, we quote the following:
“* * *' The board, of directors is the majority of them met at the proper time and place, when and where every member has the opportunity of attending and urging his objections to any resolution offered.”
In Phillips v. Newland, La.App., 166 So. 2d 357 (cert. den.), a shareholder’s meeting was called by the president of a corporation, 'but no mention was made in the notice as 'to what business was to be acted upon. All stockholders were present. Nevertheless, the court said:
“We must therefore declare, as did the trial court, that the meeting of September 10, 1963, was illegally convened since no notice was given to the shareholders of the matters to be taken up at this special meeting. Therefore, all action taken at the meeting, including election of new directors, was null and void.”
The purported amendment to the restrictions is null, void, and without binding effect on the plaintiffs notwithstanding the fact two of them purchased their lots subsequent to the inscription of the document on the conveyance records. Neither plaintiffs nor any of their ancestors in title signed the amendment. The spreading of the same on the conveyance records could not have the effect of clothing the ineffective amendment with validity.
Appellants, pointing to R.S. 9:5622, as amended, providing that actions to enjoin or to obtain damages for the commission or continuance of a violation of restrictions contained in the title to land are prescribed by two years reckoning from the commission of the violation, argue that plaintiffs’ right .to an injunction, if they had any, is barred by the prescription of two years, which is pleaded. Counsel take the position that the registration of the amendment in the conveyance records in August, 1959 (more than two years before the suit), constituted a “violation”. There is no merit to the plea of two years’ prescription. So far as the record shows there was no violation of the restrictions until the National Food Stores of Louisiana, Inc., commenced to use the lots for commercial purposes as aforestated, this violation having taken place less than two years before plaintiffs brought this action.
Appellants, in this court, have also pleaded the prescription of five years under R.C.C. art. 3542, which provides that an action for the nullity or recision of a contract is prescribed by five years. Appellants take the position that plaintiffs are seeking to have annulled or rescinded the purported amendment of August, 1959, and that, more than five years having elapsed before the filing of the suit, plaintiffs’ demand for the nullity or recision is prescribed. Counsel have mistaken the nature of the present action. Plaintiffs are not endeavoring to annul or rescind a contract, but are seeking *760 injunctive relief against a violation of restrictive covenants. The plea of five years’ prescription is overruled.
It is also argued on behalf of appellants that a strict enforcement of the covenant would be inequitable in that it will cause defendants great and irreparable injury without any measurable benefit resulting to plaintiffs who, it is said, on the contrary, may sustain damages and inconvenience from the enforcement. Further, defendants contend that strict enforcement of the covenant would be inequitable in that the land in question will be rendered useless and be completely removed from commerce.
We are not concerned with the consequences resulting from an enforcement of the covenant nor with the equities of the situation. Both of counsel’s contentions are fully answered by what the Supreme Court said in Ouachita Home Site & Realty Co. v. Collie, supra:
“Restrictions upon the use to which real property may be put may be likened to servitudes which are specifically recognized and provided for under the Code, and it cannot be disputed that a servitude legally established and valid in character is enforceable. Article 709 of the Civil Code provides in part:
“ ‘Owners have a right to establish on their estates, or in favor of their estates, such servitudes as they deem proper; provided, nevertheless, that the services be not imposed on the person or in favor of the person, but only on an estate or in favor of an estate; and provided, moreover, that such services imply nothing contrary to public order.’
“And Article 728 of the Civil Code expressly recognizes the validity of a servitude similar in character to the restrictions sought to be enforced in this case. The Codal article provides:
******
“ ‘Nonapparent servitudes are such as have no exterior sign of their existence; such, for instance, as the prohibition of building on an estate, or of building above a particular height.’
“Under the jurisprudence and Codal articles to which we have referred, we do. not think it can be disputed that building restrictions which restrain the use of real property for commercial purposes by prohibiting the construction of any building other than a residence or residences, and which insure a high type of construction by placing a minimum value upon any residence that may be built thereon, are not unreasonable and are not contrary to good morals, public order or express law, and, hence, they are not invalid and unenforceable, since the restrictions are upon the use and not upon the alienability of the property.”
The judgment appealed from is affirmed.
Affirmed,